```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Lawrence E. Wilson,          :

       Plaintiff,            :

    v.                       :      Case No. 2:14-cv-2184

Janis Peterson, et al.,      :      JUDGE MICHAEL H. WATSON
                                    Magistrate Judge Kemp
       Defendants.           :
```

                    REPORT AND RECOMMENDATION

   This is a pro se prisoner civil rights action brought by Lawrence E. Wilson, an inmate who was housed in the Madison Correctional Institution (MACI) in London, Ohio during the time period relevant to this lawsuit.  This matter is before the Court on a motion to dismiss filed by Defendants Dr. Janis Peterson, Dr. James Pomputius, and Caryn Taylor.  (Doc. 5).  The motion to dismiss has been briefed fully and is now ripe for disposition.  For the reasons set forth below, the Court will recommend that the motion to dismiss be granted.

                         I.   Background

   In this case, Mr. Wilson filed a complaint on November 14, 2014, alleging that his due process rights were violated when prison personnel failed to provide treatment for his serious mental health needs.  According to Mr. Wilson, "[t]he gravamen of the complaint is that [he] followed Department of Correction policy and procedure for diagnosis and treatment of his serious mental health needs but received no treatment whatsoever from MACI mental health [p]ersonnel while at MACI."  Compl. at ¶3. More specifically, Mr. Wilson alleges that:

> he was suffering from episodes of uncontrollable crying, the inability to eat, sleep, concentrate properly, stomach and gastrointestinal problems, constipation, headaches, thought disorganization, bizarre behavior, paranoia, all of which resulted in significant disruption in his daily life and substantial alteration of his mental functioning causing severe mental anguish and pain.
>
> Plaintiff contends, and his medical and dental records show, that the above-mentioned symptoms were exacerbated by Chronic Obstructive Pulmonary Disease, Hypertension, Rheumatoid Arthritis which was diagnosed in 2013 due to his request for a bottom bunk (this is supported by x-ray's [sic], however, Plaintiff did not receive a bottom bunk nor any medication for pain), the extraction of all remaining teeth (19 of Plaintiff's teeth were pulled in two months- December 2012 to January 2013) leaving Plaintiff toothless. Additionally, severely [sic] overcrowding in the dormitory added to these problems. Ten additional beds were added to the dormitory in 2013. Plaintiff had a floor space of twenty-four inches by eighteen inches, slept on a top bunk under a leaky roof, and rained on [sic] during inclement weather.

Id. at ¶¶4-5.  Mr. Wilson further alleges that he "was ultimately diagnosed with major depressive disorder and treated with psychotropic medication and therapy in November, 2013 at the Franklin Medical Center."  Id. at ¶6.

Mr. Wilson alleges that he used a kite to request mental health services, which resulted in an interview on August 16, 2013 with Defendant Caryn Taylor, a social worker at the MACI. Mr. Wilson claims that Ms. Taylor suggested that he participate in counseling classes, but she did not schedule a "follow-up appointment or a referral to a psychologist or psychiatrist or any person qualified to provide mental health care."  Id. at ¶9. Mr. Wilson claims that he did not have the benefit of classes after that interview, and that his symptoms became increasingly severe.  Accordingly, Mr. Wilson filed an informal complaint to

2

Defendant Dr. Janis Peterson, a mental health professional at MACI.  Dr. Peterson responded to the informal complaint, stating:

> Mr. Wilson,
> You were seen on 8/16/13 and placed on the wait list for two mental health groups – Healthy choices (starts next week) and Stress management.  The course of treatment was considered appropriate for the problems you presented.

Id. at 10.  Thus, Dr. Peterson denied Mr. Wilson's request for additional or different treatment.

Mr. Wilson then filed a notification of grievance with the MACI Institutional Inspector, stating:

> I requested mental health treatment for suspected depression.  I have completed numerous classes and programming pertaining to conflicts that may cause a depressed state, stress management, and medication awareness.  At this time more classes are ineffective.  I require more extensive mental health treatment.

Id. at 11.  Mr. Wilson alleges that, after he filed the grievance, he was involuntarily transferred in retaliation for exercising his First Amendment rights.

The disposition of grievance found Mr. Wilson's claim to lack merit.  Specifically, the disposition provided:

> Lawrence, the IIS office is in receipt of your grievance dated September 30, 2013 regarding claim of your mental health treatment.  You state that you require more extensive mental health treatment as you feel the programming offered is insufficient.
>
> I have reviewed your grievance on this matter, along with the informal complaint and response from Dr. Peterson, Mental Health Supervisor.  DRC Policy 67-MNH-15 was also reviewed.  Dr. Peterson reported that your current Mental Health Treatment plan is deemed appropriate per policy.  She advised you that you will be enrolled in two upcoming mental health groups.  The mental health treatment you are currently receiving is approved and considered warranted by

3

>J. Peterson, PhD/Dr. Pomputius.  The programming you are receiving has been determined necessary and sufficient by the mental health professionals.
>
>Having conducted all relevant interviews and review of all documentation necessary to acquire the facts, I find this grievance lacks merit.  The Mental Health Psychiatrist/s is the ultimate mental health authority at the institution and he/she determines the course of your mental health treatment therefore, your grievance is denied.

Id. at 12.

Thereafter, Mr. Wilson submitted an appeal to the Chief Inspector, again asserting that he "did not receive any programming or treatment of any kind" to address his mental health problems.  Id. at 13.  The Chief Inspector's review of the record included the following: the notification of grievance, the denial of the grievance, the appeal, the FMC MOSS database (which provides details of dates for scheduled medical trips to hospitals, results of lab work or testing, and the schedule for chronic care appointments), Mr. Wilson's electronic health care records, copies of his medical file provided by the HCA at the facility, and commissary records.  Upon review of that information, the Chief Inspector made the following findings:

>You were seen on 8-16-13.  The assessment noted "affect appropriate, mood calm, thought coherent, talkative, average eye contact.  May benefit from MH program, placed on wait list for stress management."  On 9-9-13 you had a "[sic] personality assessment inventory which is 9 pages long and evaluated your mental health status.  During that examination it noted [sic] "according to the respondent's self-report, he describes NO significant problems in the following areas: unusual thoughts or peculiar experiences; antisocial behavior; problems with empathy; unhappiness and depression; unusually elevated mood or heightened activity; marked anxiety; difficulties with health or physical functioning … His responses suggested that he is satisfied

4

>with himself as he is, that he is not experiencing marked distress and that, as a result, he sees little need for changes in his behavior." The response from Dr. Peterson dated 9-24-13 states "you were seen on 8-16-13 and placed on the wait list for two health groups – Healthy choices (starts next week) and Stress management. This course of treatment was considered appropriate for the problems you presented." When you transferred to FMC on 10-8-13 staff reviewed your mental health status and noted you were not on the caseload at the sending facility, that you had no suicidal thoughts in the past two weeks, etc." [sic] You have been seen since transferring to FMC and being [sic] following on a regular basis by Mental Health staff there. I have copied Dr. Rarooqui, ODRC Assistant Director of Clinical Services.

Id. at 14. Based upon the foregoing, the Chief Inspector found that "the mental health/medical staff at [Mr. Wilson's] facility is giving [him] proper care within the ODRC guidelines." Id. Thus, the Chief Inspector affirmed the decision of the Institutional Inspector and took no further action. The Chief Inspector did, however, "encourage [Mr. Wilson] to maintain close contact with staff to ensure that [his] current mental health/medical concerns are being addressed." Id.

Mr. Wilson sets forth claims for violations of his Eighth Amendment and First Amendment rights. As to his Eighth Amendment claim, Mr. Wilson alleges that Ms. Taylor demonstrated deliberate indifference to his serious mental health needs by failing "to provide follow-up assessment, evaluation or diagnosis by a mental health proffessional [sic]…." Id. at ¶14. Mr. Wilson further alleges that Dr. Peterson and Dr. Pomputius demonstrated deliberate indifference to his serious mental health needs by refusing to provide him with a follow-up examination and treatment. As to his First Amendment claim, Mr.

5

Wilson claims that he was involuntarily transferred to a different facility in retaliation for filing grievances.

## II. Standard of Review

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue in a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).

When analyzing a claim under a 12(b)(6) motion to dismiss, a court must take all well-pleaded factual allegations as true and construe those allegations most favorably toward the non-movant. Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). Federal Rule of Civil Procedure 8(a) admonishes a court to look only for a "short and plain statement of the claim showing that the pleader is entitled to relief," rather than requiring the pleading of specific facts. Erickson v. Pardus, 551 U.S. 89, 93 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. 5A Wright & Miller, Federal Practice and Procedure §1356 (1990).

On the other hand, more than bare assertions of legal conclusions are required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must

6

contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted).

When a court considers a 12(b)(6) motion to dismiss, it "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 665 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. To survive a motion to dismiss, a plaintiff's claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Finally, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), "and should therefore be liberally construed." Williams v. Curtain, 631 F.3d 380, 383 (6th Cir. 2011). It is with these standards in mind that the motion to dismiss will be decided.

### III. Discussion

In their motion to dismiss, Defendants make the following arguments: (1) sovereign immunity bars Mr. Wilson's §1983 claim against them in their official capacities; (2) they are not "persons" amenable to suit under §1983 when acting in their official capacities; (3) Mr. Wilson's complaint fails to allege any constitutional deprivation; and (4) they are entitled to qualified immunity. Defendants also argue that Mr. Wilson does

not have a constitutionally protected interest in a particular housing assignment or transfer to a particular prison.

In his opposing memorandum, Mr. Wilson argues that his complaint adequately sets forth an Eighth Amendment violation because he did not receive adequate mental health treatment. More specifically, Mr. Wilson states:

> Plaintiff specifically denies that he received a mental health evaluation from a psychiatrist or psychologist as required by DRC Policy, 67-MNH-02; 67-MNH-07; or 67-MNH 15[.]  It is asserted that "on September 9, 2013 plaintiff was given a separate, nine page personality assessment inventory to further evaluate his mental health status."  Plaintiff contends that this was an assessment which was not relevant to his mental health care needs at that time.  Plaintiff was not present at, nor did he have the ability to provide input into [sic] the alleged September 9, 2013 personality assessment inventory.  Plaintiff, again, specifically requested mental health "treatment" but received none. (See Informal Complaint Resolution and Notification of Grievance attached to Compliant [sic]).  Moreover, any review of Plaintiff's medical/mental health records clearly reveals a history of treatment with psychotropic medication; psychotherapy; and psycho educational groups and classes or support groups.  (It must be noted that the Plaintiff was prescribed *psychotropic medication* to control high blood pressure for several years.)  Even the most generous imaginations could not construe the defendant's [sic] actions as "*treatment*."

(Doc. 7 at 4)(emphasis in original).  Mr. Wilson also alleges that he sets forth a valid claim for a violation of his First Amendment rights because "[a] liberal construction of the complaint reveals that Plaintiff's grievances were timely filed pursuant to the Ohio Administrative Code 5102-9-31, and that Plaintiff was subsequently involuntarily transferred."  Id. at 6.  For these reasons, Mr. Wilson asks this Court to deny Defendants' motion to dismiss.

In reply, Defendants argue that Mr. Wilson's complaint only "vaguely references retaliation," and it does not assert any facts in support of this claim. (Doc. 8 at 1). Defendants maintain that Mr. Wilson's transfer did not deter him from utilizing the grievance process and reiterate that he has "no constitutionally protected interest in being transferred to a particular prison." Id. at 2. Defendants argue that, because Mr. Wilson fails to set forth any facts showing a causal connection between filing his grievances and the involuntary transfer, he fails to set forth a valid First Amendment claim. As to the Eighth Amendment claim, Defendants argue that Mr. Wilson has no constitutional right to choose a particular course of treatment. Consequently, Defendants urge the Court to dismiss Mr. Wilson's complaint.

The legal principles applicable to Mr. Wilson's claim regarding the alleged denial of medical treatment are well settled. To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can be accurately described as "deliberate indifference." Each of these components requires some elaboration.

It is not always easy to distinguish serious medical conditions from those that are not sufficiently substantial to

implicate the constitutional prohibition against cruel and unusual punishment, and the facts concerning the seriousness of an inmate's condition are frequently in dispute. In evaluating such claims, courts have given weight to a variety of factors, including whether the condition is one that a doctor or other health care professional would find worthy of treatment, whether it significantly affects everyday activities, and whether it causes (or, if left untreated, has the potential to cause) chronic and substantial pain. See Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998); see also Harrington v. Grayson, 811 F.Supp. 1221 (E.D. Mich. 1993)(focusing on the severity of the condition, the potential for harm if treatment is delayed, and whether such a delay actually caused additional harm).

Under some circumstances, expert testimony may be needed to establish the seriousness of a medical condition, particularly if the inmate's claim is founded upon an unreasonable delay in treatment. See Napier v. Madison Co., Ky., 238 F.3d 739 (6th Cir. 2001). In other cases, however, when the condition does not involve "minor maladies or non-obvious complaints of a serious need for medical care," but rather "an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers," expert testimony is not essential to a finding that a serious medical condition is present. Blackmore v. Kalamazoo County, 390 F.3d 890, 898 (6th Cir. 2004).

As to the subjective element, in Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate

10

humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety…." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

In addressing Mr. Wilson's claims regarding the alleged denial of mental health care, in addition to the above standards, the Court is mindful that the Sixth Circuit Court of Appeals distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). "A

11

patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." Owens v. Hutchinson, 79 Fed. Appx. 159, 161 (6th Cir. 2003).

In their motion to dismiss, Defendants do not argue that Mr. Wilson has failed to set forth sufficient facts to demonstrate that his mental health needs were sufficiently serious to satisfy the objective component of the deliberate indifference standard.  Rather, Defendants focus on the subjective component of the deliberate indifference standard, contending that the allegations set forth in Mr. Wilson's complaint demonstrate that they were not deliberately indifferent to his mental health needs.  Defendants state:

> For instance, Plaintiff admits that in response to his kite, he was assessed and evaluated by Defendant Caryn Taylor, a mental health social services worker, on August 16, 2013.  (Complaint at ¶ 9, Page ID # 19).  Shortly thereafter, on September 9, 2013, Plaintiff was given an additional mental health assessment which found no significant problems with a vast array of mental health indicators, including depression, anxiety, and physical functioning.  See Decision of Chief Inspector on a Grievance Appeal, attached to Plaintiff's Complaint.  (Doc. 1-2, Page ID # 26).  Furthermore, the fact that Plaintiff was transferred to FMC on October 8, 2013 (where he maintains he was treated with psychotropic medication and therapy) utterly belies any claim of deliberate indifference.

(Doc. 5 at 7) (footnote omitted).  This Court agrees.

Despite Mr. Wilson's arguments to the contrary, the complaint does not support a claim for complete denial of mental health care.  Instead, the complaint reflects that Mr. Wilson did receive treatment – that treatment, however, was not the

12

treatment that Mr. Wilson preferred or believed that he should have been given in light of his condition. The distinction between a claim for a complete denial of care and a claim for inadequate medical care is significant because "[t]he fact that alternative procedures might have better addressed a prisoner's particular needs does not show … deliberate[ ] indifferen[ce]" to a prisoner's medical needs. Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d at 377, 384 (6th Cir. 2004); see also Abdul-Wadwood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir. 1996) (finding that inmate's disagreement with "selection of medicine and therapy falls well short of demonstrating deliberate indifference to a serious medical need"). In addition, as Defendants argue, Mr. Wilson does not allege any direct involvement or affirmative action taken by Dr. Peterson and Dr. Pomputius. The fact that Dr. Peterson reviewed and responded to Mr. Wilson's informal complaint alone is insufficient to set forth a deliberate indifference claim against her. Ross v. McGuiness, 471 Fed. Appx. 608, 609 (9th Cir. 2012)("To the extent that Ross contended that defendant McGuiness violated Ross's constitutional rights in reviewing and responding to Ross's grievance about his medical care, the district court properly granted summary judgment because such allegations cannot give rise to a §1983 claim"); see also Strickland v. Militania, 2013 WL 1951862, at *13 (W.D. Va. Mar. 26, 2013)(finding that responding to informal complaints is an administrative task that does not give rise to liability under the Eighth Amendment). Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of respondeat superior, are necessary in order to hold an individual defendant liable under

13

§1983. Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978). Furthermore, the mere failure to act cannot serve as a basis for liability under §1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)("[L]iability under §1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act'"), quoting Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998). For these reasons, Mr. Wilson fails to state a claim for a violation of his Eighth Amendment rights, and the Court will recommend that Defendants' motion to dismiss this claim be granted.

The Court now turns to Mr. Wilson's First Amendment retaliation claim. In order to make out a successful First Amendment retaliation claim, an inmate must make a prima facie case proving that (1) the inmate engaged in protected conduct; (2) an adverse action was taken against the inmate that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by the inmate's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). A prison transfer typically does not qualify as an adverse action. Hermansen v. Ky. Dept. of Corr., 556 Fed. Appx. 476, 477 (6th Cir. 2014); Siggers-El v. Barlow, 412 F.3d 693, 701-02 (6th Cir. 2005) (explaining that "prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct"). That is, a prison transfer is only considered to be an adverse action in rare circumstances. See, e.g., Morris v. Powell, 449 F.3d 682, 686-87 (5th Cir. 2006)(involving a transfer to a more

14

dangerous prison); Siggers-El, 412 F.3d at 702 (finding a transfer constituted a sufficiently adverse action where plaintiff suffered "a number of foreseeable consequences" which inhibited his "ability to access the courts"). This is true because, as the Court of Appeals has found, the transfer from one prison to another prison would not deter a person of ordinary firmness from the exercise of his First Amendment rights. Friedmann v. Corrections Corp. of Am., 11 Fed. Appx. 467, 470 (6th Cir. Apr. 26, 2001)("It seems clear … that a mere transfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity").

In the instant case, Mr. Wilson argues that he was transferred involuntarily as a result of filing grievances pertaining to his mental health treatment. Under the relevant law, Mr. Wilson cannot set forth a First Amendment retaliation claim simply because he was transferred. In addition, as Defendants point out, Mr. Wilson indeed was undeterred after his transfer, given that he pursued his appeal to the Chief Inspector after the transfer took place. Thus, Mr. Wilson is unable to state a claim upon which relief can be granted, and the Court will recommend that Defendants' motion to dismiss this claim be granted.

## IV. Recommendation and Order

For the reasons set forth above, the Court recommends that the motion to dismiss filed by Defendants Dr. Janis Peterson, Dr. James Pomputius, and Caryn Taylor be granted. (Doc. 5).

V.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp_____
United States Magistrate Judge

16